Hyman Korn, <L
Defendants move for summary judgment dismissing the complaint.
The action is in libel. Defendants urge that the actual malice test, designed to give practical effect to the commitment of free public discussion in the exercise of the First Amendment privilege, precludes an issue of fact in this action.
*888 The subject article appeared in the October 8, 1962 issue of Sports Illustrated, entitled “ The Facts About the Big Fight It is said that, of particular interest to the public in reference to the Patterson-Liston championship fight, were the business aspects of the then novel idea of theatre television.
Complaint is made of the following portion of the article: “Whether Championship Sports will be around to promote it or Graff, Reiner and Smith to handle the ancillary rights is another matter. Internal Revenue agents seized all receipts the night of the fight not because of Patterson’s disputed 17-year deferred income tax payment scheme but because the government wanted to be sure it got its excise and corporate income tax (CSI as well as GRS failed to file a corporate income tax return in 1961 and therefore have delinquency records).”
A prior motion to dismiss was denied, the court stating (Championship Sports v. Time, Inc., N. Y. L. J., June 24, 1963, p. 10, col. 3, Quinn, J.) : “To publish the false statement that agents of the government have gone to the unusual and extraordinary lengths of summarily seizing one’s property to insure payment of taxes (because of previous failure to file an income tax return resulting in a delinquency record) is in effect to advertise the government’s careful, calculating, cool-eyed distrust of the taxpayer and create in the mind of a person of ordinary intelligence an impression of the latter’s general financial untrustworthiness and irresponsibility. ”
On this motion defendants rely on widespread publication of the facts throughout the country and upon inquiry, including telephone interview with the Director of the Public Information Division of the Internal Revenue Service in Washington, D. 0. The inquiry it is said was made to confirm the veracity of the reports, and it is said that the reports were confirmed by the Director. It is also stated by the writer-reporter for Sports Illustrated that he telephoned a Sports Illustrated “ stringer ” in Washington, D. C. and asked him to check out the accuracy of the various news reports. He was in receipt of a confirmation by telegram on September 28,1962, in which it was stated: ‘ ‘ The IRS also feels it had a legitimate reason to behave as it did. The sponsoring Championship Sports Inc., failed to file an income tax return in 1961, so did Graff, Reiner and Smith Enterprises Inc., organizers of the theater teevee part of the fight promotion. It was said today that these groups claimed (not officially but through stories) that they had no income last year. The IRS pointed out that a corporation must file income tax returns whether it has income or not. ’ ’
*889 In this area of the law of libel the question is not truth. Rather the issue is whether, as to an alleged false publication, there was actual malice. Of that essential element plaintiff has the burden of proof.
Defendants establish not only widespread report in leading journals but investigation including inquiry from authentic official sources. To demonstrate the absence of malice it is not required that the reporter seek out the plaintiff’s version of the dispute, and the failure to do so does not support an inference of actual malice (Rosenbloom v. Metromedia, 403 U. S. 29; Hurley v. Northwest Pub., 273 F. Supp. 967, affd. 398 F. 2d 346). In response, plaintiff refers solely to false report, but fails wholly to diminish the showing of lack of bad faith or recklessness.
The motion is granted.